## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WAYNE FULTON,                         )
                                      )
                    Plaintiff,        )
                                      )
          v.                          )        1:20CV354
                                      )
ANDREW M. SAUL,                       )
Commissioner of Social Security,      )
                                      )
                    Defendant.        )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Wayne Fulton, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.)  Defendant has filed the certified administrative record (Docket Entry 11 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 13, 16; see also Docket Entry 14 (Plaintiff's Memorandum); Docket Entry 17 (Defendant's Memorandum); Docket Entry 18 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

## I.  PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") and SSI, alleging a disability onset date of January 1, 2010.  (Tr. 198-211.)  Upon denial of those applications initially (Tr. 72-91, 116-23) and on reconsideration (Tr. 92-115, 126-34), Plaintiff

requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 135-36). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing (Tr. 33-71), during which Plaintiff amended his onset date to January 18, 2017, the protective filing date of his application for SSI (Tr. 38). Plaintiff's amendment of the onset date rendered him ineligible for DIB, as his earnings record last insured him for DIB through September 11, 2011, prior to his amended onset date. (See Tr. 72 (reflecting Plaintiff's date last insured), 16 (documenting ALJ's dismissal of Plaintiff's DIB claim).) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 13-27.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 197, 277-79), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings:

> 1. [Plaintiff] has not engaged in substantial gainful activity since January 18, 2017, the application date.
>
> 2. [Plaintiff] has the following severe impairments: spine disorder, dysfunction of a major joint, obesity, and post-traumatic stress disorder (PTSD).
>
> . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .

2

4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except [he] can occasionally balance, stoop, kneel, crouch, and crawl; occasionally climb ramps or stairs; should never climb ladders, ropes, or scaffolds; never work in hazardous environments such as at unprotected heights or around moving mechanical parts; is limited to unskilled, simple, routine, and repetitive tasks; and can have no more than occasional contact with supervisors, coworkers and the general public with respect to performing work-related duties.

. . .

5. [Plaintiff] is unable to perform any past relevant work.

. . .

9. Considering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

10. [Plaintiff] has not been under a disability, as defined in the . . . Act, since January 18, 2017, the date the application was filed.

(Tr. 19-27 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

3

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the [RFC] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process,
(continued...)

## B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ fail[ed] to incorporate non-exertional limitations on the ability to stay on task where the ALJ first f[ound] that [Plaintiff] is moderately impaired in the maintenance of [concentration, persistence, or pace ('CPP')]" (Docket Entry 14 at 6 (underscoring omitted); see also Docket Entry 18 at 1-3); and

2) "[t]he ALJ erred when he failed to properly address the opinion of [Larae] McLean, [LCSWA, Plaintiff]'s counselor [('Counselor McLean')], who concluded that [Plaintiff] could not perform mental functions that would enable him to maintain employment" (Docket Entry 14 at 10 (underscoring omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 17 at 5-14.)

### 1. CPP

In Plaintiff's first assignment of error, he maintains that "[t]he ALJ fail[ed] to incorporate non-exertional limitations on the ability to stay on task where the ALJ first f[ound] that [Plaintiff] is moderately impaired in the maintenance of CPP." (Docket Entry 14 at 6 (underscoring omitted); see also Docket Entry 18 at 1-3.)  More specifically, Plaintiff contends that the United States Court of Appeals for the Fourth Circuit has "noted that[]

---

[4] (...continued)
review does not proceed to the next step.").

'the ability to perform simple tasks differs from the ability to stay on task[ and o]nly the latter limitation would account for a claimant's limitation in [CPP]'" and thus "held that an ALJ does not account for a claimant's moderate limitations in CPP by restricting the RFC or the hypothetical question to the [VE] to [simple, routine, and repetitive tasks ('SRRTs')]." (Docket Entry 14 at 7 (citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)).) According to Plaintiff, "the ALJ's "find[ing] that [Plaintiff] would be 'limited to unskilled, [SRRTs,] and c[ould] have no more than occasional contact with supervisors, coworkers, and the general public with respect to performing work-related duties . . . [is] not sufficient to account for limitations in CPP." (Id. at (citing Dunn v. Colvin, No. 1:15CV618, 2016 WL 3570638 at *3 (M.D.N.C. June 27, 2016) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. July 20, 2016) (Biggs, J.), and Patton v. Colvin, No. 1:15CV616, 2016 WL 3417361 at *3 (M.D.N.C. June 16, 2016) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. July 13, 2016) (Biggs, J.)).) Those assertions entitle Plaintiff to no relief.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task," and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]," Mascio, 780 F.3d at 638. However, as the Fourth Circuit recently affirmed, in Mascio, the court held "that an ALJ cannot summarily 'account for a claimant's limitations in

9

[CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work,' . . . [b]ut [the court] did <u>not</u> impose a categorical rule that requires an ALJ to <u>always</u> include moderate limitations in [CPP] as a specific limitation in the RFC." <u>Shinaberry v. Saul</u>, 952 F.3d 113, 121 (4th Cir. 2020) (emphasis added). As a neighboring district court has explained:

> <u>Mascio</u> does not broadly dictate that a claimant's moderate impairment in [CPP] <u>always</u> translates into a limitation in the RFC. Rather, <u>Mascio</u> underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

<u>Jones v. Colvin</u>, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added). Here, the ALJ's decision provides a sufficient explanation as to why the RFC's restrictions to SRRTs, as well as to "no more than occasional contact with supervisors, co-workers and the general public" (Tr. 21), adequately accounted for Plaintiff's moderate deficit in CPP.

First, the ALJ recognized Plaintiff's testimony that he "ha[d] limitations in concentrating generally, focusing generally, and completing tasks" (Tr. 20; <u>see also</u> Tr. 59, 64), but found that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (Tr. 22). In

10

support of that statement, the ALJ pointed out at step three of the SEP that Plaintiff testified "that he [wa]s [] able to watch TV, play games, and handle his own medical care." (Tr. 20.) Plaintiff challenges the ALJ's reliance upon such activities, arguing that "[t]he ability to perform simple tasks . . . does not equate to an ability to maintain simple tasks in a competitive work environment," and that "the ALJ's noting these activities, without a finding as to how long [Plaintiff] can perform them, does not suffice to explain why the RFC accounts for [Plaintiff]'s moderate limitation in CPP." (Docket Entry 14 at 7 (citing Brown v. Commissioner Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017), Carradine v. Barnhart, 360 F.3d 751, 755 (7th Cir. 2004), and Craft v. Astrue, 539 F.3d 668, 680 (7th Cir. 2008)).)

Plaintiff's argument fails, because the ALJ did not rely solely on Plaintiff's abilities to watch television, play video games, and manage his health care to determine the mental RFC, relying also on Plaintiff's mental health treatment and the opinion evidence. (See Tr. 21-25.) Moreover, Plaintiff himself did not place any concentration-based qualification on his ability to engage in those activities (see Tr. 42-64, 307) and thus cannot fault the ALJ for failing to consider a qualification about which Plaintiff did not testify. Plaintiff's ability to engage in those activities provides support, along with the other factors discussed below, for the ALJ's finding that, despite moderate limitation in

11

CPP, Plaintiff remained capable of SRRTs with limited social interaction.

Second, the ALJ made the following observations regarding Plaintiff's mental health treatment:

> With regard to mental health, [Plaintiff] underwent an initial mental health evaluation on July 2, 2018. [Plaintiff] sought help managing his anger and dealing with past unpleasant experiences. Symptoms included depressed mood, irritability, nervousness, and avoidance. [Plaintiff] was diagnosed with PTSD.
>
> [Counselor McLean] prepared a narrative report dated August 6, 2018. In the report, [Counselor] McLean notes [Plaintiff] had received two sessions of outpatient therapy and the frequency of future therapy had been stepped up to weekly visits.

(Tr. 23 (internal parenthetical citations omitted).) Plaintiff challenges the ALJ's above-quoted discussion of the mental health evidence as follows:

> Unlike the case in <u>Shinaberry</u>, the ALJ did not discuss in detail psychological evaluations. The closest that the ALJ comes to a proper discussion psychological [sic] evidence is his discussion of [Counselor] McLean's opinion that, because of [Plaintiff]'s limitations, he would not be able to maintain steady employment[;] . . . however, the ALJ's discussion of [Counselor] McLean's opinion was not proper, and did not provide substantial evidence consistent with the ALJ's conclusion that [Plaintiff] was not disabled.

(Docket Entry 14 at 10; <u>see also</u> Docket Entry 18 at 2-3.)

As an initial matter, Plaintiff has neither identified which "psychological evaluations" (let alone significant findings within those evaluations) the ALJ failed to properly discuss, nor made any attempt to show how a remand for the ALJ to "discuss in detail psychological evaluations" would lead to a different result in his case. (<u>See</u> Docket Entries 14, 18.) That argument rings

12

particularly hollow given the dearth of mental health evidence in the record – as the ALJ expressly noted, Plaintiff "amended the onset date to January 18, 2017, but did not seek mental health treatment until July 2018" and, "[a]s of the date of the [ALJ's decision], [Plaintiff] had received only two outpatient therapy sessions." (Tr. 24.) Plaintiff's failure to develop that argument thus precludes relief on this front. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do."). Furthermore, as discussed below in the context of Plaintiff's second issue on review, the ALJ did not err in his evaluation and weighing of Counselor McLean's opinions.

Third, the ALJ's discussion of the opinion evidence supports his conclusion that, despite moderate limitation in CPP, Plaintiff remained capable of performing SRRTs with limited social interaction. In that regard, the ALJ accorded "some weight" to the opinions of Counselor McLean overall (Tr. 24) and, in particular, assigned "good weight" to Counselor McLean's opinion that Plaintiff "ha[d] difficulty interacting with others and ha[d] an unsteady

13

mood" (id.; see also Tr. 319).[5] Notably, Counselor McLean did not offer an opinion regarding Plaintiff's ability to concentrate or stay on task (see Tr. 319) and therefore the ALJ's crediting of her opinions with regard to Plaintiff's difficulty interacting and unsteady mood supported the inclusion of interaction limitations in the mental RFC but not concentration-related limitations (see Tr. 21).

In light of the foregoing analysis, Plaintiff has failed to demonstrate prejudicial error under Mascio, and his first assignment of error falls short.

## 2. Opinions of Counselor McLean

In Plaintiff's second and final issue on review, he maintains that "[t]he ALJ erred when he failed to properly address the opinion[s] of [Counselor] McLean . . ., who concluded that [Plaintiff] could not perform mental functions that would enable him to maintain employment." (Docket Entry 14 at 10 (underscoring omitted).) Plaintiff contests the ALJ's evaluation of Counselor McLean's opinions on three grounds (see id. at 10-15), and argues that the ALJ's errors in that regard "cannot be harmless" because, "[h]ad the ALJ properly, and consistently, interpreted [Counselor]

---

[5] The ALJ also discounted Counselor McLean's opinions 1) that Plaintiff "ha[d] physical limitations that prevent him from sitting or standing for long periods of time" as outside Counselor McLean's area of expertise, and 2) that Plaintiff could not "maintain steady employment," because such a matter "involve[d] consideration of both vocational and medical considerations," and Counselor McLean "ha[d] not established herself as a [VE] competent to reach vocational conclusions." (Tr. 24.) As explained in more detail in the next subsection, the ALJ did not err in that regard.

14

McLean's opinion, the RFC may have provided for time off-task in excess of 20% of . . . an eight-hour workday in addition to regularly scheduled breaks, and in that event the VE testified that all work would be precluded" (id. at 15 (referencing Tr. 68-69)). Plaintiff's contentions miss the mark.

Counselor McLean does not constitute an "[a]cceptable medical source[]" under the regulations, 20 C.F.R. § 416.913(a) (defined to include, inter alia, "[l]icensed psychologist[s]"), but rather an "[o]ther source[]," 20 C.F.R. § 416.913(d)(1).[6] As an "[o]ther source[]," Counselor McLean lacked the qualifications to offer "medical opinions" as defined by the regulations. See Social Security Ruling 06-03p, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("SSR 06-03p") (providing that "only 'acceptable medical sources' can give [the SSA] medical opinions . . . [and] can be considered treating sources . . . whose medical

---

[6] Applicable to claims filed on or after March 27, 2017, the Commissioner enacted substantial revisions to Section 416.913, recodified the definition of "[a]cceptable medical source" into Section 416.902(a) and, inter alia, included licensed advanced practice registered nurses and physician assistants as "[a]cceptable medical source[s]." 20 C.F.R. § 416.902(a), 416.913 (2017). This Recommendation applies the versions of the applicable regulations in effect on January 18, 2017, the protective filing date of Plaintiff's instant claim for SSI (see Tr. 16).

15

opinions may be entitled to controlling weight").[7] Nevertheless, the ALJ must still evaluate statements from "other sources" like Counselor McLean under the factors set forth in 20 C.F.R. § 416.927(c). See Social Security Ruling 96-5p, Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *5 (July 2, 1996) ("SSR 96-5p") (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions").[8]

Counselor McLean dated a letter August 6, 2018, in which she reported that Plaintiff had initially sought treatment on July 2, 2018, that he "began [o]utpatient [t]herapy on a biweekly basis for the alleviation of symptoms associated with having experiencing [sic] traumatic events in his life," that "[h]e ha[d] participated in two [o]utpatient sessions," and that "he ha[d] recently been stepped up to weekly visits." (Tr. 319.) Counselor McLean noted that she diagnosed Plaintiff with PTSD, and provided the following opinions regarding the impact PTSD had on Plaintiff's ability to function:

> [Plaintiff] is reports [sic] that due to his upbringing he has difficult [sic] time interacting with other people. [Plaintiff] requests early morning appointments due to the waiting area not being crowded at that time of

---

[7] The Commissioner rescinded SSR 06-3p for claims filed on or after March 27, 2017. See 82 Fed. Reg. 15263 (Mar. 27, 2017).

[8] The Commissioner rescinded SSR 96-5p for claims filed on or after March 27, 2017. See 82 Fed. Reg. 15263 (Mar. 27, 2017).

16

day. [Plaintiff] has some health impairments as well
that prevent him from maintaining steady employment as
his mood continues to be unsteady, thereby interfering
with his ability to sit or stand for many hours at a
time, interact with others or complete tasks that would
be required in working.

Due to his physical and mental health ailments, it is
impossible for [Plaintiff] to maintain steady employment.
It is recommended for him to receive [d]isability so that
he may continue to focus his attention on his personal,
mental and physical health.

(Id.)

The ALJ evaluated and weighed Counselor McLean's opinions as

follows:

. . . [T]he opinion of [Counselor] McLean is given some
weight. [Counselor] McLean noted [Plaintiff] had
difficulty interacting with others, an unsteady mood, and
had difficulty sitting or standing for many hours at a
time. In conclusion, [Counselor] McLean opined it was
impossible for [Plaintiff] to maintain steady employment.
With regard to the assessment that [Plaintiff] has
difficulty interacting with others and has an unsteady
mood, the opinion is given good weight. Although the
record contains documentation of only two mental health
visits, [Counselor] McLean's assessment is consistent
with the psychological intake notes. However,
[Counselor] McLean also notes [Plaintiff] has physical
limitations that prevent him from sitting or standing for
long periods of time. As mental health provider,
[Counselor] McLean is not competent to opine regarding
[Plaintiff]'s physical ability to engage in work
activity, and that portion of her opinion is given little
weight.

Further, the opinion regarding [Plaintiff]'s ability to
maintain steady employment is given little weight. A
claimant's ability to maintain employment involves
consideration of both vocational and medical
considerations. Although [Counselor] McLean articulates
the factors she considered when making the opinion, she
has not established herself as a [VE] competent to reach
vocational conclusions.

17

[Counselor] McLean's opinion must also be viewed in context of the entire disability claim. [Plaintiff] amended the onset date to January 18, 2017, but did not seek mental health treatment until July 2018. As of the date of the opinion, [Plaintiff] had received only two outpatient therapy sessions. While the record contains prior reference to an anxious presentation, the severity of the limitations articulated by [Counselor] McLean are not consistent with the earlier medical records. Despite noting an anxious presentation, the record does not indicate the providers at the Rockingham Free Clinic believed [Plaintiff] required mental health treatment. For the above reasons, the opinion of [Counselor] McLean generally is given some weight, and the opinion regarding [Plaintiff]'s ability to maintain steady employment is given little weight.

(Tr. 24 (internal parenthetical citations omitted).)

Plaintiff first asserts that, because "the ALJ gave [Counselor McLean's] opinion overall 'some weight,' and the assessment that [Plaintiff] had difficulty performing tasks that would be required in working due to his unsteady mood 'good weight,' the ALJ should have included further limitations in the RFC to account for these limitations." (Docket Entry 14 at 12-13 (quoting Tr. 24).) The ALJ here limited Plaintiff to SRRTs to account for his difficulty performing tasks, as well as to only occasional contact with coworkers, supervisors, and the public to address his unsteady mood and problems interacting with others (see Tr. 21), and Plaintiff has neither explained how those restrictions fail to adequately capture the ALJ's assignment of "good weight" to Counselor McLean's opinions, nor suggested which additional limitations the ALJ should have included in the mental RFC (see Docket Entry 14 at 10-15), foreclosing relief arising out of that argument, see Zannino, 895

18

F.2d at 17 ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes, 2014 WL 906220, at *1 n.1 ("A party should not expect a court to do the work that it elected not to do.").

Plaintiff further faults the ALJ for according "'little weight'" to Counselor "McLean's opinion that [Plaintiff] cannot maintain steady employment, . . . despite the fact . . . that [Counselor] McLean articulated the factors she considered when making the opinion." (Docket Entry 14 at 13 (quoting Tr. 24).) As quoted above, however, the ALJ noted that "[a] claimant's ability to maintain employment involves consideration of both vocational and medical considerations," and that Counselor McLean "ha[d] not established herself as a [VE] competent to reach vocational conclusions." (Tr. 24.) Indeed, the regulations direct ALJs not to "give any special significance" to "statement[s] by a medical source that you are 'disabled' or 'unable to work,'" as such matters remain "reserved to the Commissioner" as "administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 416.927(d).

Plaintiff additionally challenges the ALJ for "f[inding] that 'the severity of the limitations articulated by [Counselor] McLean [we]re not consistent with the earlier medical records'" (Docket Entry 14 at 13 (quoting Tr. 24)), but failing to "identify in what

19

ways the treatment records are not consistent with the limitations identified by [Counselor] McLean, and why he chose to credit some restrictions . . . but not others" (id. at 13-14 (citing Burney v. Berryhill, 276 F. Supp. 3d 496, 499 (E.D.N.C. 2017) (unpublished))). Contrary to Plaintiff's allegation, the ALJ did adequately explain how Counselor McLean's opinions lacked consistency with the prior medical evidence. The ALJ expressly noted that "the record contain[ed] prior reference to an anxious presentation" (Tr. 24 (citing Tr. 321, 325, 336)), but that, "[d]espite noting an anxious presentation, the record d[id] not indicate the providers at the Rockingham Free Clinic believed [Plaintiff] required mental health treatment" (id.). In fact, the records from the Rockingham Free Clinic documented nervousness and anxiousness, as well as dysphoric mood, in the "Review of Systems," i.e., self-report, portions of the treatment records (see Tr. 321, 325, 336), but showed normal mood, affect, and behavior in the "Objective" portion of the examinations (see Tr. 322, 326, 333, 336). Further, as the ALJ's above-quoted analysis shows, he sufficiently explained which portions of Counselor McLean's opinions he credited and the reasons why he credited those portions. (See Tr. 24.)

Plaintiff also contends that, although the ALJ found Counselor McLean's opinions inconsistent with the earlier medical records (see Docket Entry 14 at 14 (referencing Tr. 24)), the ALJ "failed to survey the later medical record for evidence of mental

20

impairments," and "[t]he record shows, for example, that on July 3, 2018, and September 5, 2018, in primary care visits to the Free Clinic of Rockingham County, on a Review of Systems, [Plaintiff] was positive for dysphoric mood, and was nervous and anxious" (id. at 14 (citing Tr. 321, 325, 336)).  Plaintiff's argument glosses over the fact that the ALJ explicitly cited the exact same three pages in noting that "the record contain[ed] prior reference to an anxious presentation" (Tr. 24 (citing Tr. 321, 325, 336)), but that "the record d[id] not indicate the providers at the Rockingham Free Clinic believed [Plaintiff] required mental health treatment" (id.).  Moreover, Plaintiff fails to establish that Plaintiff's self-report of nervousness, anxiousness, and dysphoric mood conflict with the ALJ's finding that Plaintiff possessed "moderate" limitation in his ability to interact with others, which the regulations define as "fair" ability to interact "independently, appropriately, effectively, and on a sustained basis," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00F.2.c.

Under these circumstances, Plaintiff's challenge to the ALJ's evaluation and weighing of Counselor McLean's opinions falls short.

### III.  CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing the Decision of the Commissioner of Social

21

Security (Docket Entry 13) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be granted, and that this action be dismissed with prejudice.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

May 10, 2021